IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OREN PANITCH, et al., | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civ. No. 16-4586 |
| | : | |
| THE QUAKER OATS COMPANY, | : | |
| Defendant. | : | |
| | : | |

**Diamond, J.**                                                                   **April 5, 2017**

**M E M O R A N D U M**

This is the last of seven putative class actions filed across the country in which the plaintiffs make the same key allegation: that the "100% Natural" labels on certain Quaker Oats products are false and misleading. (Compl., Doc. No. 1.) Five of the earlier-filed cases are proceeding in a consolidated action in the Northern District of Illinois. See Gibson v. Quaker Oats Co., No. 16-4853 (N.D. Ill.). A sixth case was voluntarily dismissed. Quaker asks me to transfer this case to the Northern District of Illinois under either the first-filed rule or 28 U.S.C. § 1404(a) or, in the alternative, to stay the case pending *Gibson*'s resolution. (Doc. No. 5.) Because transfer is appropriate under both the first-filed rule and § 1404(a), I will grant Quaker's Motion and transfer this case to the Northern District of Illinois.

    **I.**     **Procedural History**

        **A. The Six Earlier-Filed Complaints and the Consolidated Action**

Between April 29, 2016 and May 4, 2016, plaintiffs filed five putative class actions, alleging that the "100% Natural" labels on certain Quaker Oats products are false and misleading because the oats contain detectable quantities of the herbicide glyphosate. See Compl., Daly v. Quaker Oats Co., No. 16-2155, Doc. No. 1 (E.D.N.Y. Apr. 29, 2016); Compl., Cooper v. Quaker Oats Co., No. 16-2364, Doc. No. 1 (N.D. Cal. Apr. 29, 2016); Compl., Gibson v. Quaker Oats

Co., No. 16-4853, Doc. No. 1 (N.D. Ill. May 2, 2016); Compl., Jaffee v. Quaker Oats Co., No. 16-21576, Doc. No. 1 (S.D. Fla. May 3, 2016); Compl., Kinn v. Quaker Oats Co., No. 16-2-10756-7 (Wash. Super. Ct. King Cty. May 4, 2016). On June 1, 2016, a sixth, materially identical action was filed in the Northern District of Illinois. See Compl., Wheeler v. Quaker Oats Co., No. 16-5776, Doc. No. 1 (N.D. Ill. June 1, 2016).

In July 2016, the plaintiffs in *Jaffee*, *Daly*, and *Cooper* agreed to transfer their cases to the Northern District of Illinois for consolidation. See Jaffee, No. 16-21576, Doc. No. 12 (S.D. Fla. July 8, 2016) (order granting stipulation to transfer case); Daly, No. 16-2155, Doc. No. 12 (E.D.N.Y. July 13, 2016) (same); Cooper, No. 16-2364, Doc. No. 16 (N.D. Cal. July 13, 2016) (same). The cases were consolidated with *Gibson*, and on August 11, 2016, the plaintiffs filed their consolidated amended complaint. See Consolidated Am. Compl., Gibson, No. 16-4853, Doc. No. 28 (N.D. Ill. Aug. 11, 2016).

On the same day, Quaker removed *Kinn* to the Western District of Washington. See Notice of Removal, Kinn, No. 16-1262, Doc. No. 1 (W.D. Wash. Aug. 11, 2016). On August 23, 2016, Quaker moved to transfer *Kinn* to the Northern District of Illinois. See Def.'s Mot. to Transfer, Kinn, No. 16-1262, Doc. No. 10 (W.D. Wash. Aug. 23, 2016).

On September 26, 2016, the plaintiff in *Wheeler*—which was not consolidated with *Gibson*—voluntarily dismissed her case. See Notice of Voluntary Dismissal, Wheeler, No. 16-5776, Doc. No. 19 (N.D. Ill. Sept. 26, 2016).

On November 3, 2016, the Washington District Court granted Quaker's motion to transfer. See Kinn, No. 16-1262, Doc. No. 22 (W.D. Wash. Nov. 3, 2016) (order granting motion to transfer). All the earlier-filed cases are now pending before Judge Charles Norgle of the Northern District of Illinois in one consolidated proceeding.

### B. The Instant Complaint

On August 22, 2016—months after the other cases were initiated, and nearly two weeks after the *Gibson* plaintiffs filed their consolidated amended complaint—Named Plaintiffs Oren Panitch, Gina Davis, and Margie Rizika filed the instant Complaint, which was assigned to Judge Dalzell. (Compl., Doc. No. 1.) Acting on behalf of a putative nationwide class and putative Pennsylvania, New Jersey, and Texas subclasses, Plaintiffs allege that Quaker has deceptively marketed certain oatmeal products as "100% Natural," when the products actually contain glyphosate. (Id. ¶¶ 1-25.) Plaintiffs bring claims on behalf of the putative nationwide class for breach of express warranty, breach of implied warranty, unjust enrichment, negligent misrepresentation, and injunctive relief. (Id. ¶¶ 120-143, 200-214 (Counts I-III, VII-VIII).) On behalf of the putative state subclasses, Plaintiffs allege violations of the states' consumer protection statutes. (Id. ¶¶ 144-199 (Counts IV-VI).) They seek damages, restitution, disgorgement, injunctive relief, counsel fees, and costs. (Id. at 41 (Prayer for Relief).)

On October 11, 2016, Quaker moved to transfer this case to the Northern District of Illinois under both the "first-filed rule" and 28 U.S.C. § 1404(a) or, in the alternative, to stay the case pending the resolution of *Gibson*. (Doc. No. 5.) On October 25, 2016, Plaintiffs responded. (Doc. No. 9.) The Parties have exhaustively briefed the matter. (Doc. Nos. 5, 9, 14, 19, 20.)

On January 4, 2017, the case was reassigned to me. (Doc. No. 17.)

## II. Legal Standards

### A. The First-Filed Rule

As long explained by the Third Circuit:

> The first-filed rule encourages sound judicial administration and promotes comity among federal courts of equal rank. It gives courts 'the power' to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court.

3

E.E.O.C. v. Univ. of Pa., 850 F.2d 969, 971 (3d Cir. 1988); accord Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 929 (3d Cir. 1941) ("In all cases of concurrent jurisdiction, the court which first has possession of the subject must decide it." (quoting Smith v. McIver, 22 U.S. (9 Wheat.) 532, 535 (1824))); see also 15 Charles Alan Wright et al., Fed. Prac. & Proc. § 3854 & n.12 (4th ed. Jan. 2017) ("[W]hen two courts have concurrent jurisdiction over a dispute involving the same parties and issues, as a general proposition, the forum in which the first-filed action is lodged has priority.") (collecting cases). The rule "permits courts to consolidate similar cases by transferring later-filed cases for consolidation with the first-filed case." Palagano v. NVIDIA Corp., No. 15-1248, 2015 WL 5025469, at *1 (E.D. Pa. Aug. 19, 2015); see also Chavez v. Dole Food Co., Inc., 836 F.3d 205, 217 & n.48 (3d Cir. 2016) (en banc) (citing 15 Wright et al., Fed. Prac. & Proc. § 3854 & n.12, at 339-43 (4th ed. 2013)).

Although courts differ with respect to the degree of similarity required, a more "flexible approach [is] proper because it is more consistent with the purposes of the first-filed rule." Palagano, 2015 WL 5025469, at *2; see also Chavez, 836 F.3d at 216 ("[T]he first-filed rule is 'grounded on equitable principles' and requires district court judges to 'fashion[] a flexible response to the issue of concurrent jurisdiction.'" (second alteration in original) (footnotes omitted) (quoting E.E.O.C., 850 F.2d at 977)). Accordingly, in adopting this "more flexible approach," courts in this Circuit have repeatedly held that "the rule applies to cases that are substantially similar." Palagano, 2015 WL 5025469, at *2 (collecting cases). With this greater flexibility, "[t]he applicability of the first-filed rule is not limited to mirror image cases where the parties and the issues perfectly align. Rather, the principles underlying the rule support its application where the subject matter of the later filed case substantially overlaps with that of the earlier one." Villari Brandes & Kline, P.C. v. Plainfield Specialty Holdings II, Inc., No.

09-2552, 2009 WL 1845236, at *6 (E.D. Pa. June 26, 2009). The "substantive touchstone of the first-to-file inquiry is subject matter." Id. (quoting Shire U.S., Inc. v. Johnson Matthey, Inc., 543 F. Supp. 2d 404, 409 (E.D. Pa. 2008)).

"[R]are or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping" are proper bases upon which a court may retain jurisdiction of a later-filed action. E.E.O.C., 850 F.2d at 976.

### B. Transfer

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a).

Congress enacted § 1404(a) "to prevent the waste 'of time, energy, and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (quoting Cont'l Grain Co. v. Barge FBL-585, 364 U.S. 19, 26-27 (1960)). "A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988). "[C]ourts through the decades have recognized that each case must turn on its particular facts, and the trial court must consider and balance all the relevant factors to determine whether the litigation would proceed more conveniently and whether the interests of justice would be better served by transfer to a different forum." 15 Wright et al., Fed. Prac. & Proc. § 3847 (footnote omitted) (citing cases). Although "there is no definitive formula or list of . . . factors to consider, courts have considered many variants of the private and public interests protected by the language of § 1404(a)." Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995) (citation omitted).

5

> The *Jumara* Court set out private and public interests that all the Circuits have reiterated:
>
> The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).
>
> The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

Id. at 879-880 (citations omitted); accord Royal Bed & Spring Co., Inc. v. Famossul Industria e Comercio de Moveis Ltda., 906 F.2d 45, 52 (1st Cir. 1990); N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 112 (2d Cir. 2010); Landers v. Dawson Constr. Plant, Ltd., 201 F.3d 436 (4th Cir. 1999) (unpublished table decision); In re Volkswagen of America, Inc., 545 F.3d 304, 315 (5th Cir. 2008) (en banc); Cherokee Exp. Co. v. Chrysler Int'l Corp., 142 F.3d 432 (6th Cir. 1998) (unpublished table decision); Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc., 626 F.3d 973, 977-78 (7th Cir. 2010); Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 691 (8th Cir. 1997) (citing Jumara); Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000); Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d 1153, 1167-70 (10th Cir. 2010); Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n.1 (11th Cir. 2005); see also 15 Wright et al., Fed. Prac. & Proc. § 3847 & n.7 (courts employ a "wide variety of verbal formulations" of the 1404(a) factors, but there is a "general commonality of analysis") (collecting cases).

### III. Discussion

#### A. The First-Filed Rule

Plaintiffs' Complaint is substantially identical to the consolidated amended complaint in *Gibson*, with many paragraphs copied verbatim. (See Def.'s Mem. in Supp. of Mot. to Transfer at 6, Doc. No. 5 (identifying several paragraphs copied word-for-word from *Gibson* complaint).) Indeed, the factual allegations underlying the claims here are the *same* as in *Gibson*. In both cases, the named plaintiffs allege that the *same* defendant (Quaker Oats) made the *same* claims (*e.g.*, "100% Natural," "100% Natural Whole Grain," "heart healthy," etc.) respecting the *same* three products (Quaker Oats Old-Fashioned, Quaker Oats Quick 1-Minute, and Quaker Steel Cut Oats) across the *same* geographic region (nationwide), and that these claims misled the public for the *same* reason (products "are not 100% natural, but instead contain the chemical glyphosate"). (Compare, e.g., Compl. ¶¶ 1, 3, 6, 105), with Consolidated Am. Compl. ¶¶ 1, 4, 5, 126, Gibson.

"[I]n a class action, the classes, and not the class representatives, are compared." Catanese v. Unilever, 774 F. Supp. 2d 684, 688 (D.N.J. Mar. 28, 2011) (quoting Ross v. U.S. Bank Nat'l Ass'n, 542 F. Supp. 2d 1014, 1020 (N.D. Cal. 2008)); accord Wilkie v. Gentiva Health Svcs., Inc., No. 10-1451, 2010 WL 3703060, at *3 (E.D. Cal. Sept. 16, 2010) ("Substantial similarity of the parties is determined by comparing the proposed classes as they currently stand."). The named plaintiffs here and in *Gibson* seek to represent identical nationwide classes of all persons "who have purchased the Products, for personal use, and not for resale, within any applicable limitations period until Notice is provided to the class." (Compl. ¶ 105); Consolidated Am. Compl. ¶ 126, Gibson. "Where each set of named plaintiffs intends to represent the other set, the underlying principles of the first-filed rule . . . permit this Court to defer to the court of first jurisdiction." Abushalieh v. Am. Eagle Exp., 716 F. Supp. 2d 361, 366

7

(D.N.J. 2010). Because the cases are brought on behalf of the same putative nationwide class and "the exact same representations are at the heart of each lawsuit," the cases' "substantial similarity is sufficient to trigger the first-filed rule." Palagano, 2015 WL 5025469, at *4.

Plaintiffs here argue that transfer is inappropriate because they seek to represent state subclasses different from those in *Gibson*, and to bring an additional nationwide class claim for breach of the implied warranty of merchantability. (See Pls.' Mem. in Opp. at 8-10, Doc. No. 9.) Yet, Plaintiffs acknowledge that the two proceedings considerably overlap, with nationwide class claims for "breach of express warranty, negligent misrepresentation, unjust enrichment, and beach [sic] of state consumer statutes" in both actions. (Id. at 9.) The additional claims in this action do not render the first-filed rule inapplicable. See Catanese, 774 F. Supp. 2d at 688 ("[D]ifferences in the causes of action . . . are insufficiently material to prevent application of the first-filed rule. The factual allegations underlying these claims are exactly the same. . . . [O]verlapping subject matter is the key; exact identity of claims is not required."). Were the rule otherwise, it could easily be circumvented: plaintiffs in materially identical, nationwide class actions would evade transfer simply by adding claims. See id. ("Indeed, in a class action situation such as this, it would be impossible for the claims to overlap exactly where the actions are brought in different states, and the purpose of the rule would be defeated. There would be nothing to stop plaintiffs in all 50 states from filing separate nationwide class actions based upon their own state's law."); see also Worthington v. Bayer Healthcare, LLC, No. 11-3017, 2012 WL 1079716, at *6 (D.N.J. Mar. 30, 2012) ("Finding an insubstantial overlap because of the fact that the claims are asserted under different state laws would defeat the judicial efficiency rationale undergirding the first-filed rule.").

Plaintiffs also argue that they base the instant case on a theory of harm different from that

8

in *Gibson*:

> In this case, Plaintiffs are pursuing claims under a theory that glyphosate removed the heart healthy, cholesterol lowering benefits of the oat promoted by Defendant and Defendant knew or should have known of the impact glyphosate had on the representations it made. The plaintiffs in the Consolidated Proceeding instead focus solely on the ingestion glyphosate [sic] rather than the impact glyphosate has on the merchantable and warranted qualities of the oat.

(Pls.' Mem. in Opp. at 10, Doc. No. 9.) This is a distinction without a difference. In both cases, the named plaintiffs base their claims on "a theory that glyphosate removed the heart healthy, cholesterol lowering benefits of the oat." Indeed, Plaintiffs here copied this allegation nearly verbatim from the *Gibson* consolidated amended complaint. (Compare Compl. ¶ 74 ("When added to oats, glyphosate reduces the level of beta glucan, a soluble fiber linked to cardiovascular health and improvements in cholesterol levels.")), with Consolidated Am. Compl. ¶ 74, Gibson ("[T]he presence of glyphosate in Quaker Oats reduces the level of beta glucan, a soluble fiber linked to improvements in cholesterol levels and cardiovascular health.").

Although Plaintiffs argue that Quaker is forum shopping, the record suggests the opposite. (See Pls.' Mem. in Opp. at 2, 10-11, Doc. No. 9.) "Normally, a plaintiff must establish that the defendant in the second action . . . filed the first action . . . to avoid the second forum." Catanese, 774 F. Supp. 2d at 690-91 (citing E.E.O.C., 850 F.2d at 978, and FMC Corp. v. AMVAC Chem. Co., 379 F. Supp. 2d 733 (E.D. Pa. 2005)). Quaker filed none of the prior actions. Plaintiffs filed their Complaint here months after the other six actions were initiated and after four of those actions had been consolidated in Illinois. In these circumstances, Plaintiffs appear to be forum shopping; Quaker's desire to litigate in one forum all the identical class claims filed against it is entirely understandable. See, e.g., Palagano, 2015 WL 5025469, at *2 (finding "it would be extremely difficult to ignore the efficiency gains that might result from consolidation" of substantially similar putative class actions); Worthington, 2012 WL 1079716,

9

at *7 (allowing similar putative class actions to proceed in different fora "would cause substantial duplication of effort, and worse, potentially inconsistent rulings" (quoting Catanese, 774 F. Supp. 2d at 688)); Catanese, 774 F. Supp. 2d at 690 (allowing class actions to proceed in two fora would force defendant "to defend identical actions on opposite ends of the country"); see also Castillo v. Taco Bell of America, LLC, 960 F. Supp. 2d 401, 405 (E.D.N.Y. 2013) ("[I]t would be patently unfair to require Defendants to litigate the class issues here at the same time as those matters are being litigated in the first-filed action.").

In sum, sound judicial administration and comity weigh strongly in favor of transfer under the first-filed rule. See E.E.O.C., 850 F.2d at 971.

### B. Transfer

In the alternative, I conclude that the *Jumara* factors also weigh strongly in favor of transfer.

*The Parties' Forum Preferences*

Plaintiffs argue that their choice of forum "is perhaps the most important consideration in light of the fact that [Quaker] seeks to force Plaintiffs to try their cases hundreds or thousands of miles from their homes, and seeks to force Plaintiffs to give up their rights to trial in a local forum." (Pls.' Mem. in Opp. at 13, Doc. No. 9.) I disagree.

Although ordinarily entitled to great weight, a "plaintiff's choice of forum becomes 'substantially less important' when he sues representatively on behalf of a class." MP Vista, Inc. v. Motiva Enters. LLC, No. 07-99, 2008 WL 5411104, at *2 (D. Del. Dec. 29, 2008) (quoting Yang v. Odom, 409 F. Supp. 2d 599, 606 (D.N.J. 2006)); accord Freeman v. Hoffmann-La Roche Inc., No. 06-13497, 2007 WL 895282, at *3 (S.D.N.Y. Mar. 21, 2007) ("[A] plaintiff's choice of forum 'is afforded little weight' in a purported class action, as here, where 'numerous

potential plaintiffs [are] each possibly able to make a showing that a particular forum is best suited.'"); see also 15 Wright et al., Fed. Prac. & Proc. § 3848 ("[I]n representative actions, where the plaintiff seeks to vindicate rights of others[,] the plaintiff's venue preference is weakened. Thus, courts have held that the factor is entitled to little weight in shareholder derivative litigation and in class actions." (footnotes omitted)).

Moreover, "courts in our district have held that where there is a strong likelihood of consolidation with a related action, a transfer of venue is warranted." Palagano, 2015 WL 5025469, at *3 (quoting Villari Brandes & Kline, P.C., 2009 WL 1845236, at *5); accord Catanese, 774 F. Supp. 2d at 690 ("This factor alone favors transfer."). "In fact, the presence of a related action in the transferee forum is such a powerful reason to grant a transfer that courts do so even where other *Jumara* factors, such as the convenience of the parties and witnesses, would suggest the opposite." Villari Brandes & Kline, P.C., 2009 WL 1845236, at *5. Accordingly, "the existence of a related action in another district is a sound reason for favoring transfer when venue is proper there, even though the transfer conflicts with the plaintiff's choice of forum." Id.

Plaintiffs concede that they "originally could have bright [sic] this action in the Northern District of Illinois, because the Defendant resides there for venue purposes." (Pls.' Mem. in Opp. at 13, Doc. No. 9.) "Thus, Defendant's preference under these circumstances is not overshadowed by Plaintiff's choice of forum, but rather overcomes that ordinarily 'paramount concern.'" Palagano, 2015 WL 5025469, at *5 (citation omitted). The pendency of *Gibson*—which comprises all the pending earlier-filed cases—alone warrants transfer.

### *Whether the Claims Arose Elsewhere*

This factor also favors transfer. "Where plaintiff's cause of action arises from strategic policy decisions of a defendant corporation, the defendant's headquarters can be considered the

11

place where events giving rise to the claim occurred." Id. (quoting Ayling v. Travelers Prop. Cas. Corp., No. 99-3243, 1999 WL 994403, at *5 (E.D. Pa. Oct. 28, 1999)). "More specifically, in the context of claims based on misrepresentations or omissions, 'misrepresentations and omissions are deemed to occur in the district where they were transmitted or withheld, not where they are received.'" Id. (quoting Kerik v. Tacopina, No. 14-488, 2014 WL 1340038, at *5 (D.N.J. Apr. 3, 2014)). Accordingly, Plaintiffs' claims arose in the Northern District of Illinois, where Quaker is headquartered. (See Compl. ¶ 41 ("At all times mentioned herein, Quaker Oats Company was a Chicago, Illinois-based division of PepsiCo, Inc.")).

### *The Parties' Convenience*

Once again, this factor weighs in favor of transfer. Although Quaker's financial resources exceed Plaintiffs', the burden imposed on the company by litigating identical nationwide class claims in two districts would be considerable. See, e.g., Palagano, 2015 WL 5025469, at *6 ("To the extent that fact witnesses are employees of [the defendant], while they may be available for trial in any forum, the extreme inconvenience and expense to [the defendant] of bringing them to trial in Philadelphia relates to the relative convenience of the parties to the suit." (citation omitted)). Moreover, requiring Quaker to defend materially identical suits in two districts would inevitably lead to duplication of voluminous discovery and documentary evidence, the burden of which would fall almost entirely on the company. See Catanese, 774 F. Supp. 2d at 690 ("[D]efend[ing] identical actions on opposite ends of the country . . . would inevitably include duplication of a large amount of discovery and documentary evidence."); see also Worthington, 2012 WL 1079716, at *7. Litigating in the Northern District of Illinois would not impose any greater burden on Plaintiffs—whose involvement is limited to having purchased oatmeal—than litigating here. See Catanese, 774 F.

12

Supp. 2d at 690 ("In comparison, there is very little burden on the plaintiffs. Their involvement is limited to purchasing ice cream. They will have little, if any, documentary evidence to contribute."). Further, any burden on Plaintiffs is minimized by Quaker's offer to depose them in their home states. (See Mot. to Transfer at 11, Doc. No. 5); cf. 15 Wright et al., Fed. Prac. & Proc. § 3849 ("The economic burdens of transfer on the nonmoving parties sometimes have been avoided, or at least reduced, by . . . the defendant's willingness to bear specified expenses of the plaintiff." (footnotes omitted)).

### *The Convenience of the Witnesses*

This factor is neutral. Because "party witnesses are presumed to be willing to testify in either forum despite any inconvenience," "convenience of non-party witnesses is the main focus." Palagano, 2015 WL 5025469, at *6 (quoting Hillard v. Guidant Corp., 76 F. Supp. 2d 566, 570 (M.D. Pa. 1999)); see also Jumara, 55 F.3d at 879 (limiting consideration of the convenience of witnesses "to the extent that the witnesses may actually be unavailable for trial in one of the fora"); 15 Wright et al., Fed. Prac. & Proc. § 3851 ("[T]he fact that important nonparty witnesses may be within the subpoena power of one court but not the other is a significant issue."). Although Plaintiffs argue that "the witnesses with respect to Plaintiffs' specific experiences reside in or near the Eastern District of Pennsylvania," neither party has identified any non-party witnesses who would be unavailable in either forum. (Pls.' Mem. in Opp. at 11, Doc. No. 9.)

### *The Location of Books and Records*

This factor is also neutral. "The Third Circuit has stated that this factor should be limited to the extent that the files could not be produced in the alternative forum." Lomanno v. Black, 285 F. Supp. 2d 637, 646 (E.D. Pa. 2003) (citing Jumara, 55 F.3d at 879). "[T]he technological

13

advances of recent years have significantly reduced the weight of this factor in the balance of convenience analysis." Id. (citation omitted). "In earlier times, reviewing documents required physical presence in the situs where they were kept or stored. Transporting hard copies to a distant court was often cumbersome and expensive. Technology has changed things." 15 Wright et al., Fed. Prac. & Proc. § 3853. "Today, with digitization, many documents exist in electronic format, which can be sent over the Internet." Id. No party has asserted that relevant records could not be produced in either forum.

*Public Interest*

The public is obviously well-served by avoiding duplicative litigation. "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." Cont'l Grain Co. v. Barge FBL-585, 364 U.S. 19, 26 (1960). Plaintiffs nonetheless argue that the public interest does not favor transfer because *Gibson* is in its early stages, and "no discovery has taken place in any action." (Pls.' Mem. in Opp. at 14-15, Doc. No. 9.) Plaintiffs thus seek to stand the public interest factor on its head. That *Gibson* has not yet significantly progressed *favors* transfer, which will preclude the needless duplication of judicial, lawyer, and party resources. See, e.g., Elan Suisse Ltd. v. Christ, No. 06-3901, 2006 WL 3838237, at *3 (E.D. Pa. Dec. 29, 2006) ("[T]he pendency of a related case in its early phases in the transferee forum is a powerful reason to grant a change of venue."); see also A.J. Indus., Inc. v. U.S. Dist. Ct., 503 F.2d 384, 389 (9th Cir. 1974) ("The feasibility of consolidation is a significant factor in a transfer decision, although even the pendency of an action in another district is important because of the positive effects it might have in possible consolidation of discovery and convenience to witnesses and parties." (citation omitted)); cf., e.g., Zelenkofske

Axelrod Consulting, L.L.C. v. Stevenson, No. 99-3508, 1999 WL 592399, at *2 (E.D. Pa. Aug. 5, 1999) (transfer may be inappropriate "where the second-filed suit had developed further at the time the [transfer] motion was made").

Plaintiffs also argue that because I am more familiar with the governing law, transfer to the Northern District of Illinois is less desirable. Again, I disagree. "[A]lthough the familiarity of the trial judge with applicable state law . . . is a consideration that could tip the balance in an otherwise close call, this factor is of little weight." Palagano, 2015 WL 5025469, at *7 (internal quotation marks and citations omitted); McCraw v. GlaxoSmithKline, No. 12-2119, 2014 WL 211343, at *7 (E.D. Pa. Jan. 17, 2014) (governing law will not weigh in transfer analysis where case does not implicate "the law of a foreign nation" or something akin to "the difference between Pennsylvania's common law system and Louisiana's civil code system"); accord Brozoski v. Pfizer Inc., 00-4215, 2001 WL 618981, at *3 (S.D.N.Y. June 6, 2001) ("[T]he fact that the law of another jurisdiction governs the outcome of the case is a factor accorded little weight on a motion to transfer. This is especially true where—as here—there are no complex questions of foreign law involved." (citation omitted)); see also 15 Wright et al., Fed. Prac. & Proc. § 3854 (state law considerations are "given significantly less weight, however, when the case involves basic or well-established, as opposed to complex or unsettled, issues of state law").

Moreover, my purported familiarity with governing law is no greater than that of Judge Norgle. In addition to their Pennsylvania statutory claim, Plaintiffs bring claims under New Jersey and Texas law, and the applicable law for the nationwide class claims has yet to be determined. Judge Norgle and I would thus have to apply the laws of other jurisdictions—a common enough occurrence. See, e.g., Palagano, 2015 WL 5025469, at *7 ("Federal district courts are regularly called upon to interpret the laws of jurisdictions outside of the states in

15

which they sit." (citation omitted)). Regardless of which law applies, "the district court in either state is more than capable of applying that law to the case." McCraw, 2014 WL 211343, at *7.

Finally, Pennsylvania has no significant interest in having the matter decided here. "[T]he fact that [Quaker oatmeal] was sold nationwide and that numerous other actions alleging substantially similar misconduct by [Quaker] were filed in other districts and are now pending in [Illinois] suggests that (1) this is not a 'local controversy' in Pennsylvania that should clearly be decided in Pennsylvania, and (2) [Illinois] may have the strongest interest in deciding what most closely resembles a 'local controversy' to [Illinois]." Palagano, 2015 WL 5025469, at *7.

\*   \*   \*

In sum, Quaker has plainly shown that the private and public *Jumara* factors weigh in favor of transfer under § 1404(a).

**IV.    Conclusion**

For the foregoing reasons, I will grant Quaker's Motion and transfer this matter to the Northern District of Illinois under the first-filed rule; in the alternative, I will order transfer under 28 U.S.C. § 1404(a).

An appropriate Order follows.

                                              */s/ Paul S. Diamond*
                                              _____

April 5, 2017                                              Paul S. Diamond, J.